IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**CONESTOGA TRUST f/k/a Conestoga Settlement Trust; and CONESTOGA TRUST SERVICES, LLC, as Trustee,**
        **Plaintiffs,**

-vs-                                    Case No. A-15-CA-152-SS

**COLUMBUS LIFE INSURANCE COMPANY,**
        **Defendant.**

## ORDER

BE IT REMEMBERED on the 23rd day of June 2016, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court is Defendant Columbus Life Insurance Company's Motion for Summary Judgment [#26], Plaintiffs Conestoga Trust f/k/a Conestoga Settlement Trust and Conestoga Trust Services, LLC, as Trustee's Response [#35, sealed] in opposition, Defendant's Reply [#46, sealed] in support, Plaintiff's Surreply [#48], and Defendant's Response to Plaintiff's Surreply [#49]. Having reviewed the documents, the governing law, the arguments of the parties at hearing, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

This is a breach of contract and declaratory judgment action brought by Plaintiffs Conestoga Trust f/k/a Conestoga Settlement Trust and Conestoga Trust Services, LLC (together, Conestoga), a life settlement trust and its trustee, against Defendant Columbus Life Insurance Company, the issuer of a life insurance policy owned by Conestoga. Conestoga contends that by failing to provide

proper notice before terminating coverage under the policy, Columbus Life breached the policy's terms. Columbus Life has moved for summary judgment, arguing that under the applicable law, (1) there is no genuine issue it sent the required notice and (2) Conestoga cannot bring a claim for attorney's fees. As set forth below, the Court finds summary judgment is inappropriate on the merits because Conestoga has raised a fact issue as to whether Columbus Life sent the required notice. Columbus Life is entitled to summary judgment, however, on the attorney's fees claim.

I. **Facts**

Conestoga Trust is a life settlement trust. A life settlement is the sale of a life insurance policy by the insured to a third party in exchange for an immediate cash payment. Upon the sale, the third-party purchaser becomes the beneficiary of the policy and will therefore receive the policy's death benefit after the death of the insured. Conestoga, like other life settlement trusts, holds portfolios of purchased life insurance policies and allows investors to purchase fractional interests in those policies. Thus, upon the death of a particular insured, investors are paid based upon the fractional interest they hold in that insured's policy.

In October 2007, Columbus Life issued the life insurance policy that is the subject of this litigation (the Policy) to one Peggy Mulvaney, a Michigan resident. The death benefit payable under the Policy was $2.4 million. *See* Mot. Seal. [#28-5, sealed] Ex. C (McDermott Dep.) at 49:25–50:1, 61:17–18. In June 2010, Ms. Mulvaney sold the Policy in a life settlement transaction to non-party entity James Settlement Services International (JSS). In November 2011, JSS sold the Policy to Conestoga. Columbus Life mailed Conestoga a confirmation of the change in ownership and beneficiary status on May 7, 2012. *See* First Am. Compl. [#23-2] Ex. B (Notice of Beneficiary Acknowledgment).

Conestoga contracted with an escrow agent, Provident Trust Group, LLC, "to establish an escrow account for the express purpose of holding funds for payment of life insurance policy premiums on behalf of [Conestoga]." App. Mot. Summ. J. [#27-3] Ex. C-4 (Escrow Agmt.) at 1. Provident was thus responsible for ensuring all monthly premiums on the policies owned by Conestoga, including the monthly premium due on the Policy, were paid on time and in full. *See* McDermott Dep. at 49:7–20. As all parties agree, however, in August 2014, Provident erroneously stopped making the Policy's premium payments to Columbus Life. Mot. Seal [#28-3, sealed] Ex. A (Noschang Decl.) ¶ 10. As per its terms, the Policy lapsed because of the non-payment of premiums.[1] *See id.* Ex. A-1 (Policy) at CLIC 000041. Under the Policy, once a lapse occurs:

> We [Columbus Life] will allow a Grace Period. We will mail You . . . a notice indicating the minimum premium You must pay in order to keep the policy in force. . . .
>
> You will have 61 days from the date We mail You this notice to pay or mail enough premium. If You do not pay or mail the needed premium within the 61-day Grace Period, all coverage provided by this policy will terminate without value at the end of the 61-day period. We will rely on the postmark to determine the date of mailing.

*Id.*

According to Columbus Life, following the Policy's lapse, it mailed a grace notice to Conestoga (the Grace Notice), triggering the 61-day grace period. Conestoga, of course, maintains it never received the Grace Notice, and neither Provident nor Conestoga paid the overdue $15,223.96 premium to Columbus Life. Consequently, Columbus Life terminated the Policy and mailed a notice of loss of coverage to Conestoga dated January 22, 2015. *See* Mot. Seal [#28-3, sealed] Ex. A-15

---

[1] Under the Policy, coverage continues after premium payments are discontinued until "the Net Cash Surrender Value [of the Policy] is less than the sum of the Monthly Policy Charges for the current month." Policy at CLIC 000041. Simply explained, premium payments in excess of the minimum premium increase the Net Cash Surrender Value. *See id.* at CLIC 000042–43. Conestoga paid the minimum monthly premium on the Policy; thus, coverage lapsed shortly after Provident stopped making the monthly payments.

(Notice of Loss of Coverage). Conestoga received the Notice of Loss of Coverage and, on February 4, 2015, wired $15,223.96 to Columbus Life. *See* First Am. Compl. [#23-4] Ex. D (Outgoing Wire). However, by faxed letter dated February 6, 2015, Columbus Life notified Conestoga the $15,223.96 had not and would not be applied to the Policy, as "[t]he funds were not timely paid" and the Policy "lapsed and is no longer in force." *See* Noschang Decl. Ex. A-16 (Feb. 6, 2015 Letter) at CLIC 000107.

Although the Policy permits reinstatement of coverage within a five-year period and both the Notice of Loss of Coverage and February 6 letter so indicated, *see id.*; Notice of Loss of Coverage, Conestoga did not apply to reinstate the Policy. Rather, Conestoga "immediately" purchased a replacement policy from JSS. McDermott Dep. at 61:25–62:4. The source of the funds used to purchase the replacement policy was Conestoga International, LLC (International), a non-party entity which is the trustor of Conestoga Trust. *See id.* at *id.* Ex. C-2 (Trust Agmt.) at 65 (amending the trust agreement to name International as trustor).

## II.  Procedural History

Conestoga initiated this action by filing its Complaint on February 23, 2015. *See* Compl. [#1]. Following entry of a scheduling order and an extension of the dispositive motions deadline, on December 29, 2015, Conestoga filed its First Amended Complaint, the presently operative pleading. *See* First Am. Compl. [#23]. The First Amended Complaint (1) brings a breach of contract claim based on Columbus Life's termination of the Policy after allegedly failing "to mail and/or postmark" the Grace Notice; and (2) seeks declarations that the Policy is in full force and effect, Columbus Life breached the Policy in various ways concerning the Grace Notice, and Columbus Life either waived the late payment or withdrew termination of the Policy through "initial

retention" of the $15,223.96 wire payment. Conestoga seeks damages or, alternatively, specific performance, and request attorneys' fees under Chapter 38 of the Texas Civil Practices and Remedies Code. The instant motion for summary judgment followed, and is now ripe for decision.

## Analysis

### I. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343

(5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

Columbus Life argues it is entitled to summary judgment because: (1) Conestoga has no damages, as International, not Conestoga, paid for the replacement policy; (2) alternatively, Conestoga failed to mitigate its damages, as it failed to apply for reinstatement of the Policy; and (3) the evidence conclusively establishes Columbus Life mailed the Grace Notice. Additionally, as a threshold matter, Columbus Life argues Michigan law, not Texas law, applies to Conestoga's breach-of-contract claim and request for attorney's fees. The Court considers each of these arguments in turn, beginning with the choice of law issues.

A.      **Choice of Law**

Because this is a diversity case, Texas law governs the choice-of-law analysis. *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004) ("District courts sitting in diversity apply the choice-of-law rules of the forum state."). "If the laws of the states do not conflict," however, "no choice-of-law analysis is necessary," and the court need only apply the law of the forum state. *LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 456–57 (5th Cir. 2011) (citation omitted); *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) (quoting *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002)).

i.      **Texas Law Applies to the Breach-of-Contract Claim**

Columbus Life first argues Michigan law, not Texas law, applies to Conestoga's breach-of-contract claim. Conestoga responds a choice-of-law analysis is unnecessary because (1) evidentiary presumptions are procedural matters which are governed by the law of the forum, or alternatively, (2) Michigan and Texas law do not conflict. *See* Resp. [#35] at 7–10 (citing *Maryland Cas. Co. v. Williams*, 377 F.2d 389, 394 (5th Cir. 1967), for the proposition that presumptions are governed by the law of the forum); *id.* at 10–12 (arguing Michigan and Texas law do not conflict). As set forth below, the Court rejects Conestoga's first argument. Columbus Life does not rely on any evidentiary presumption in presenting the evidence it believes entitles it to summary judgment. Further, the "mailbox rule" does not create any presumptions here, as the issue is whether Columbus Life *mailed* the Grace Notice, not whether Conestoga *received* it. As for Conestoga's argument Michigan and Texas law do not conflict and Texas law therefore applies, the Court agrees. Under either state's law, a genuine issue of material fact on the question whether Columbus Life mailed the Grace Notice

precludes summary judgment. As such, no choice-of-law analysis is necessary, and Texas law applies to Conestoga's breach-of-contract claim.

### 1. Because no "presumption" operates in this context, whether presumptions are governed by the law of the forum is irrelevant

First, while Conestoga may be correct that presumptions are procedural matters governed by the law of the forum, its argument—which refers to the mailbox rule, the common-law rule providing that the proper addressing and mailing of a document raises a rebuttable presumption the document was received—is improperly framed. The Policy requires Columbus Life to *mail* a grace notice; it does not state the notice must be received. *See* Policy at CLIC 000041 ("We will *mail* You . . . a notice" (emphasis added)); *see also* Resp. [#35] at 1 ("The policy could be terminated only after [Columbus Life] first timely *mailed* a Grace Period Notice to Conestoga. The parties dispute whether [Columbus Life] *mailed* the notice as required." (emphasis added)). Because the ultimate question is whether Columbus Life mailed the Grace Notice, not whether Conestoga received it, "the mailbox rule does not operate in this context." *See Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419 (5th Cir. 2007) (finding the mailbox rule inoperable to "create presumptions" because "the focus here is only on whether notice was mailed").

To the extent Conestoga contends Columbus Life is relying on some evidentiary presumption of mailing in presenting its own evidence, that argument is rejected. Proof of mailing "may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business." *Id.* at 420 (quoting *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983)); *see also Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 918 (N.D. Tex. 2000). Circumstantial evidence is proof of a chain of events and circumstances indicating that something is or is not a fact, and is intrinsically no different than direct evidence. *See*

*Holland v. United States*, 348 U.S. 121, 139–40 (1954). Here, to prove it mailed the Grace Notice, Columbus Life is offering just that: circumstantial evidence—evidence of its customary mailing practices (and the customary mailing practices of Pitney Bowes, the company that presorts Columbus Life's mail and delivers it to the United States Postal Service)—as proof it mailed the Grace Notice. This evidence does not involve any evidentiary presumption.

The Court therefore rejects Conestoga's argument there is no conflict because the law of the forum governs presumptions. Columbus Life is not relying upon an evidentiary presumption in its offer of proof, and the mailbox rule does not operate to create any presumptions where the issue is mailing, not receipt.

### 2. Because the result is the same under Texas and Michigan law, Texas law applies

Conestoga next contends Texas and Michigan law do not truly conflict on the question whether it has provided sufficient evidence to survive summary judgment on its breach-of-contract claim, and thus no conflicts analysis is necessary. The Court agrees. Under either Michigan or Texas law, Conestoga has adduced evidence sufficient to create a genuine issue of fact on the issue whether Columbus Life mailed the Grace Notice. That fact issue must be resolved by the jury, not by the Court.

Columbus Life strenuously resists this conclusion, arguing Conestoga presents only bare testimony of non-receipt in the face of Columbus Life's evidence of mailing and that such testimony is not enough to survive summary judgment under Michigan law. Columbus Life relies most heavily on a footnote from an unpublished Michigan Court of Appeals decision, *Mockerman v. North Pointe Insurance Co.*, No. 237354, 2003 WL 21540438 (Mich. Ct. App. July 8, 2003). In *Mockerman*, the plaintiff contracted with the defendant insurance company to insure his vehicle, and financed

payment of the premium through a premium finance company. 2003 WL 21540438 at *1. The plaintiff "recalled making a down payment on a six-month policy of insurance" and "agreed to pay the cost of the insurance premium in installments," but did not make any payments after the first payment. *Id.* The insurer offered evidence three correctly addressed notices of cancellation were mailed to the plaintiff, two from the premium financing company and one directly from the insurer, none of which were returned as undeliverable. *See id.* During his deposition, the plaintiff testified he never received the notices, but offered no further evidence to rebut the insurer's. *See id.*

The *Mockerman* court affirmed the trial court's grant of summary judgment to the insurer, stating the case was governed by *Doshi v. Michigan Basic Property Insurance Association*, 582 N.W.2d 542 (Mich. Ct. App. 1998), another case involving cancellation of an insurance contract by a premium finance company. 2003 WL 21540438 at *2. In *Doshi*, as the *Mockerman* court explained, "the trial court properly granted defendant's motion . . . despite plaintiff's denial of receipt of the notice of cancellation where defendant submitted evidence of compliance with the mailing requirements of M.C.L. § 500.1511[,]" a Michigan statute that requires a premium finance company seeking to cancel an insurance contract to mail written notice to the insured of its intent to cancel, among other requirements. *Id.*; M.C.L. § 500.151(1)–(2). In the footnote cited by Columbus Life, the *Mockerman* court further opined: "[P]laintiff's denial of receipt of the notice of cancellation failed to address defendant's compliance with the mailing requirement . . . . A deficiency in the custom and practice of identifying policies to be cancelled and the mailing of notices is not established by an absence of receipt of notice." *Id.* at *2 n.5.

Under other circumstances, however, Michigan courts have denied summary judgment where a litigant testifies to non-receipt of mail. In *Auto-Owners Insurance Co. v. Gallup*, for example, an

insurer filed suit against its insured in connection with a fire insurance claim. 477 N.W.2d 463, 463–64 (Mich. Ct. App. 1991). The insured's policy required the insured to provide a sworn proof of loss statement to the insurer within 60 days after the loss. *Id.* The insured claimed he mailed the proof of loss form to the insurer after having it notarized, but the insurer claimed it never received the form. *Id.* at 464. Affirming denial of the insured's motion for summary judgment, the *Gallup* court explained:

> Neither the trial court nor this Court can assume [the insured] did or did not mail the proof of loss, nor can we assume [the insurer] did or did not receive it. [The insured] may not have mailed it, . . . may have mailed it and it was lost by the postal service, or . . . may have mailed it and [the insurer] lost it. The question whether [the insured] timely mailed the proof of loss is a question of fact that must be resolved by the jury.

*Id.* at 465.

Further, in *Golson v. Allstate Insurance Co.*, No. 251302, 2005 WL 473648 (Mich. Ct. App. Mar. 1, 2005), the court found a fact issue precluded summary judgment where an insured claimed she never received a notice of policy cancellation. The insurer in *Golson* submitted, as evidence of mailing, an internal document listing the insured's name among a list of people who were sent cancellation notices, a copy of a notice of intent to cancel, and a copy of a notice of cancellation. *Id.* at *2. The insured responded by asserting she never received a cancellation notice. *Id.* Additionally, the insured pointed to testimony given by the insurer's claims adjuster that there was "no indication of any cancellation notice" in the relevant claim file, with the caveat "he could not conclude from the absence of such indication . . . that no cancellation notice had been sent." *Id.* The *Golson* court concluded the adjuster's admission, along with the insured's testimony of non-receipt, created a fact issue; thus, it reversed the lower court's grant of summary judgment to the insurer. *Id.*

The Court concludes this case is more closely analogous to *Auto-Owners* and *Golson* than it is to *Mockerman*, and thus that under Michigan law, a fact issue would preclude summary judgment on the question whether Columbus Life mailed the Grace Notice. Columbus Life argues Conestoga has presented nothing more than bare testimony of non-receipt from Pat Washburn, the individual to whom all Conestoga's mail was sent; suggests the quantum of evidence of mailing it (Columbus Life) has provided is "unparalleled in the caselaw"; and concludes "denying summary judgment . . . would be tantamount to holding that it is impossible for a commercial entity to establish as a matter of law that it placed an item in the mail." Resp. Surreply [#49] at 2; Reply [#46] at 16. The Court cannot agree.

To be sure, Columbus Life has presented circumstantial evidence of mailing: a copy of the Grace Notice, dated November 17, 2014; a copy of the Pitney Bowes mail inserter[2] job ticket associated with the batch of mail containing the Grace Notice; quality control records confirming two of its employees inspected the Grace Notice itself after it was processed by the inserter; and evidence other pieces of mail in the same batch were received by their intended recipients. *See* Mot. Seal [#28-4] Ex. B-1 (Grace Notice); *id.* Ex. B (Bartik Decl.) ¶¶ 9–10; *id.* Ex. B-2 (Inserter Job Ticket) at 2; *id.* Ex. B-3 at CLIC 000790, 793–94. In response, however, in addition to Washburn's testimony he did not receive the Grace Notice, Conestoga has presented evidence of the regular business practices related to the receipt of mail of DeLeon & Washburn, P.C., Conestoga's legal representative for matters concerning the Trust and the recipient of all Trust-related mail.[3]

---

[2] An inserter is an automated machine that folds, inserts, seals, addresses, and adds postage to mail. *See* Mot. Seal [#28-4] Ex. B (Bartik Decl.) ¶ 4.

[3] The sole member of Conestoga Trust Services, LLC, Trustee, is Conestoga Member Services, LLC. The sole member of Conestoga Member Services, LLC, is the law firm of DeLeon & Washburn, P.C. Pat Washburn, Hector DeLeon, and Sandra Allen are all employed at DeLeon & Washburn. *See* Resp. [#35] at 4; *id.* [#35-1] Ex. A (De Leon

Specifically, Hector De Leon, the founder and chairman of DeLeon & Washburn, Pat Washburn, De Leon's law partner, and Sandra Allen, the firm's office manager, all testified to the firm's regular protocol concerning the retrieval and distribution of mail. According to their testimony, Allen was responsible for the firm's mail from January 2012 through 2015, and "retrieve[d] and distribute[d] the mail on a daily basis." Resp. [#35-1] Ex. A (De Leon Aff.) ¶ 12; *id.* Ex. C (Allen Aff.) ¶¶ 3–4. Allen opened, sorted, and delivered all mail, and mail addressed to Conestoga was delivered to Washburn. De Leon Aff. ¶ 13; Washburn Aff. ¶ 7; Allen Aff. ¶¶ 3–4. Washburn's protocol was to immediately forward any time-sensitive mail concerning Conestoga (such as a grace notice, termination warning, or lapse notice) via email to Provident and De Leon, then to place a copy of the notice in the paper file for the appropriate policy. Washburn Aff. ¶¶ 15, 17; *see* Washburn Aff. Ex. A (examples of such time-sensitive mail forwarding).

There was testimony these procedures were followed during the relevant time frame: Allen was present at work every day that the firm was open during November 2014, the month the Grace Notice was allegedly mailed. Washburn Aff. ¶ 8; Allen Aff. ¶ 5. No copy of the notice was forwarded or placed in the paper file. Washburn Aff. ¶¶ 19, 21–22. By way of contrast, Conestoga presents evidence it received and processed a 2012 grace notice concerning the Policy in accord with its office protocol, preventing the Policy from lapsing. De Leon Aff. ¶ 14; Washburn Aff. ¶ 19; Washburn Aff. Ex. B (2012 grace notice & forwarding email).

Here, Conestoga's evidence of its regular business practices related to the receipt of mail and testimony those practices were followed during November 2014 goes well beyond the bare testimony of non-receipt found insufficient to create a fact issue in *Mockerman*. In *Mockerman*, moreover, the

---

Aff.) ¶¶ 3, 5, 12–13.

insured party flatly denied receipt of *three* separate notices; here, only one notice is at issue. Further, Conestoga has presented more evidence than did the insurer in *Auto-Owners*; in that (published) decision, the court found the insurer's claim it did not receive the single form mailed by its insured was sufficient to defeat summary judgment. Finally, although the type of additional evidence Conestoga has presented is different in kind, like the *Golson* insured, Conestoga *has* produced more evidence than simply a claim it did not receive the notice. Denying summary judgment here thus comports with the relevant Michigan authorities.

A final point: Columbus Life urges Allen's testimony should be afforded little or no weight in the analysis because she "cannot affirmatively say that the Grace Notice was not received" and "has no photographic memory of any mail she may have seen at one time." Reply [#46] at 16; Mot. Seal [#28-2, sealed] Ex. 1 (MSJ Mem.) at 18. The Court finds this argument particularly unpersuasive. Just as Columbus Life's evidence regarding typical business practices concerning outgoing mail is circumstantial evidence the Grace Notice was sent, Allen's testimony regarding typical business practices concerning incoming mail is circumstantial evidence the Grace Notice was never received. Denial of summary judgment under these circumstances is not "tantamount to holding that it is impossible" to establish mailing as a matter of law—it is hewing to the Court's duty, at the summary judgment stage, to view the factual record in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations. *See Matsushita*, 475 U.S. at 587; *Washburn*, 504 F.3d at 508; *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 254–55.

In sum, the Court concludes that, viewed in the light most favorable to Conestoga and without weighing the evidence presented, Conestoga's testimony of non-receipt, evidence of its

typical business practices concerning the receipt of mail, testimony those business practices were followed throughout the month of November 2014, and evidence it received other time-sensitive notices without issue are enough, taken together, to preclude summary judgment for Columbus Life under Michigan law.

Application of Texas law would also result in denial of summary judgment. The Texas Supreme Court has held an insured's affidavit stating she did not receive the insurer's notice of cancellation raises a fact issue precluding summary judgment. *See Sudduth v. Commonwealth Cty. Mut. Ins. Co.*, 454 S.W.2d 196, 197–98 (Tex. 1970) ("The rule that a testimonial denial of the receipt of a letter constitutes some evidence that the letter was not mailed has been recognized in Texas, at least where the relevant testimony comes from interested witnesses on both sides."). Because application of Texas law would produce the same result, this Court need not decide whether Texas or Michigan law governs. *Nashua P'ship*, 659 F.3d at 456–57. Accordingly, Texas law, the law of the forum, applies to Conestoga's breach of contract claim. *Mumblow*, 401 F.3d at 620.

### ii. Michigan Law Applies to the Attorney's Fees Claim

Columbus Life's second choice-of-law argument concerns Conestoga's claim for attorney's fees. As Conestoga acknowledges, a true conflict exists: Texas law permits the recovery of attorney's fees in a breach-of-contract action, while Michigan law prohibits it under the circumstances of this case. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8); *Burnside v. State Farm Fire & Cas. Co.*, 528 N.W.2d 749, 751 (Mich. Ct. App. 1995); Resp. [#35] at 3 & n.1 (acknowledging the conflict). The Court finds Michigan law applies to the attorney's fees claim, and thus that Columbus Life is entitled to summary judgment on this issue.

The parties agree Section 192 of the Restatement (Second) of Conflict of Laws, which specifically governs issues related to the "validity of a life insurance contract" and "the rights created thereby," is relevant. *See* MSJ Mem. at 13–14; Resp. [#35] at 5–6. Under § 192, the law "of the state where the insured was domiciled at the time the policy was applied for" governs "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties," in which case that state's law governs. *Id.* In determining whether a state has a "more significant relationship" under § 6 principles, Texas courts examine "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 582 (5th Cir. 2015). These contacts are weighed by their quality, not their number. *Id.* (citing *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996)).

Here, Columbus Life argues Michigan law applies, as Ms. Mulvaney was domiciled in Michigan at the time she applied for the Policy and no state has a more significant relationship to the parties or the transaction. Conestoga responds Texas law should control the attorney's fees issue because "Texas has the most significant relationship to the particular substantive question before the Court: whether notice of default was properly provided on a policy held by a Texas trustee." Resp. [#35] at 3. Thus, Conestoga contends, the attorney's fees issue falls within the "unless" clause of § 192—as well as within an official comment by the Restatement authors that explains application of another state's law "may on occasion be appropriate, particularly with respect to acts[] such as the giving of notice of default by the insurance company." *See id.* at 5 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 192, cmt. d).

The Court agrees with Columbus Life. The "particular issue" in question is not, as Conestoga argues, "whether notice of default was properly provided"—it is whether a claimant who proves an insurer breached a life insurance policy may thereafter collect attorney's fees. Thus, the comment cited by Conestoga is inapplicable. As for the "unless" clause, the Court does not agree that the fact a Texas entity holds the Policy makes Texas's relationship with the Policy more significant. Michigan remains the place of contracting, place of negotiation, and location of the subject matter of the Policy. Additionally, Conestoga Trust and Conestoga Trust Services, LLC, Trustee. are both Delaware entities. Non-party Conestoga Member Services, LLC, the sole member of Conestoga Trust Services, LLC, and non-party De Leon & Washburn, P.C., the sole member of non-party Conestoga Member Services, LLC, are Texas entities, but this does not change the fact that Conestoga Trust Services, LLC, the Trustee, is not. The Texas citizenship of non-party entities does not establish that Texas has a more significant relationship to this transaction and these parties than does Michigan, the place of the insured's domicile at the time of her application for the Policy. *Cf. Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 405 (5th Cir. 2004) (fact Georgia employer took out life insurance policy for employee and made itself the beneficiary does not militate against application of Texas law, law of the state where employee was domiciled).

The Court therefore finds the law of Michigan governs the question whether Conestoga may collect attorney's fees if it proves a breach of the Policy. As the parties agree, Michigan law prohibits the recovery of attorney's fees under the circumstances of this case. As such, summary judgment for Columbus Life on Conestoga's claim for attorney's fees is proper.

**B.       Damages**

Columbus Life next contends it is entitled to summary judgment because Conestoga has no damages or, alternatively, failed to mitigate damages. First, the Court notes these arguments are underdeveloped; Columbus Life, for example, cites to no authority in support of the former contention. *See* MSJ Mem. at 19–20; Reply [#46] at 17–18. In any event, Columbus Life takes the position Conestoga cannot recover damages in the form of lost profits because any lost profits are owed to International, the non-party entity (and trustor of Conestoga Trust) that purchased the replacement coverage. MSJ Mem. at 19. Conestoga, Columbus Life argues, "makes no profits because it is contractually obligated to pay 100% of all funds received from investors and 100% of all proceeds from litigation to . . . International." *Id.*

Conestoga responds by pointing to the contract between itself and International that Columbus Life is referencing, under which "International provides various services to Conestoga," including International's "expertise with respect to the acquisition of life insurance policies." Resp. [#35] at 24 (quoting App. Mot. Summ. J. [#28-6, sealed] Ex. D-2 (Services Agmt.) at 2.01). The Services Agreement provides that Conestoga will compensate International with "100% of all funds received by the Trust" from investors. Services Agmt. at Addendum A. According to Conestoga, this arrangement "does not mean that Conestoga did not suffer the damage" caused by the loss of profits in the first instance. Resp. [#35] at 25.

The Court agrees with Conestoga. Columbus Life has directed the Court to no legal authority whatsoever in support of its contention Conestoga has no damages because it pays all its profits to International pursuant to the Services Agreement. At best, Columbus Life has marshaled some sort of equitable argument concerning misuse of the corporate form, and the Court finds this approach

unpersuasive. Columbus Life has made no allegations International is Conestoga's alter ego, used for illegal purposes, or a sham used for fraudulent purposes. Consequently, Columbus Life's argument is rejected.

As for Columbus Life's contention it is entitled to summary judgment because Conestoga allegedly failed to mitigate damages, that argument is also rejected. First, the Fifth Circuit recently concluded, making an *Erie* guess, that "mitigation of damages is an offset to damages rather than a condition precedent to recovery under Texas law." *Carrizales v. State Farm*, 518 F.3d 343, 350 (5th Cir. 2008). Second, Texas courts have held a mitigation-of-damages question ordinarily presents a fact issue appropriately resolved by the jury. *E.g., In re Tex. Mut. Ins. Co.*, 360 S.W.3d 588, 596 (Tex. App.—Austin 2011, reh'g overruled). As such, summary judgment on this ground is denied.

## C.  Merits

Finally, Columbus Life argues summary judgment is proper because it has conclusively established it mailed the Grace Notice. As the Court explained in section II.A.i.2, *supra*, Conestoga has adduced evidence sufficient to create a fact issue on that question.[4] Consequently, summary judgment is denied.

## Conclusion

Texas law applies to Conestoga's breach-of-contract claim, as under either Michigan or Texas law, the parties' evidence concerning whether Columbus Life mailed the Grace Notice creates a fact issue inappropriate for resolution on summary judgment. As Conestoga has demonstrated a

---

[4] Conestoga devotes a great deal of energy in its briefing to the argument summary judgment is improper because Columbus Life has presented no evidence of a postmark. Because Conestoga has not itself moved for summary judgment, consideration of this argument is unnecessary, given the fact issue raised by the parties' competing evidence. The Court notes for Conestoga's information, however, that it finds this argument thoroughly unpersuasive. Nothing in the plain language of the Policy requires Columbus Life to retain or produce any postmark on any document.

genuine issue of fact, summary judgment on the merits is improper. Michigan law applies to Conestoga's attorney's fees claim, however, and Columbus Life is therefore entitled to summary judgment on that issue. Finally, the Court rejects Columbus Life's arguments concerning damages. As such, Columbus Life's motion for summary judgment is granted in part and denied in part.

Accordingly:

IT IS ORDERED that Defendant Columbus Life Insurance Company's Motion for Summary Judgment [#26] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the 28th day of July 2016.

*Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE